## ROBERT P. RYAN v. MINNEAPOLIS POLICE RELIEF ASSOCIATION, INC.

187 N. W. (2d) 774.

June 11, 1971—No. 42656.

*Dorian W. Zaske,* for appellant.
*Glenn D. McCarty,* for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Rolloff, JJ.

PER CURIAM.

Appeal from judgment of the district court denying claim of Robert P. Ryan to a policeman's pension pursuant to L. 1949, c. 406, § 5, subd. 1(4), as amended by L. 1953, c. 127, § 5. (Minn. St. 1957, § 423.745, subd. 1[4]).[1]

---

[1] Not published in official state statutes after 1957 because it is local legislation.

It appears from the stipulated facts that plaintiff began employment with the Minneapolis Police Department as a patrolman on August 3, 1964. He was suspended on February 1, 1965, and subsequently discharged for disability because of a "bilateral loss of hearing." His medical report indicates that he was exposed to heavy gunfire while serving in the front lines in Korea. It is agreed that the disability is in no way connected with his service as a patrolman.

After denial of his application to defendant, Minneapolis Police Relief Association, Inc., for a pension for disability, plaintiff asserted his rights in a declaratory judgment action wherein summary judgment was granted on motion of defendant. The issues involved and the disposition of them are well stated in the memorandum made a part of the trial court's order:

"Plaintiff claims he is entitled to permanent disability pension benefits under M.S.A. Section 423.745, subd. 1(4) [L. 1949, c. 406, § 5, subd. 1(4), as amended by L. 1953, c. 127, § 5]. The parties have stipulated that plaintiff's disablement was not caused by his work. (See Stipulated Facts on file herein). This being so, the issue presented here is whether plaintiff is nonetheless entitled to the pension benefits.

"Section 423.745, subd. 1(4) reads:

" 'Subdivision 1. Persons entitled to receive. The association shall grant pensions payable from the policemen's pension fund in monthly installments, in the manner and for the following purposes:

* * * * *

" '(4) To any member not eligible for a service pension who, while a member of the police department of the city, becomes diseased or sustains an injury *while in the service* which permanently unfits him for the performance of police duties, there shall be paid monthly during his lifetime a pension equal to 32 units while so disabled.' (Emphasis supplied)

"Plaintiff reads the statute as meaning that when a member becomes diseased or sustains an injury while a member of the police department, he is entitled to pension benefits if the injury or disease permanently disqualifies him from the performance of police duties. Should that be so, then the words 'while in the service' are superfluous, since the provision already contains the words 'while a member of the police department of the city.' The phrase 'while in the service' was more than likely intended to mean 'while in the act of serving.' One Minnesota case, not directly in point, interpreting the word 'service' as used in the bylaws of a firemen's relief association established pursuant to authority in G.S. 1923 (1 Mason, 1927) Section 3728, held that the word 'serv-

ice' as used in the context of the bylaws meant 'the labors, duties, and things to be done by a fireman as such.' *Renz v. Hibbing Firemen's Relief Assn.*, 186 Minn. 370, 243 N. W. 713 (1932).

"When pension statutes such as this one do not clearly state whether or not there must be a causal connection between the disability and the duties, the courts generally hold that there must be such causal connection. As stated in Anno., 'Causal Connection Between Fireman's or Policeman's Performance of Official Duties and His Disability, for Purposes of Recovering Disability Benefits,' 27 A.L.R. 2d 974, 978 (1953):

" 'The necessity of a causal connection between the disability and the duties of the pension applicant is not always apparent from the wording of the specific pension statute involved.

" 'However, unless the statutes are clearly of the insurance type, the courts generally have construed them as requiring the showing of a causal connection in order to qualify the applicant for benefits.'
And such statutes as a rule are not of the insurance type. As the Minnesota Court stated in *Renz*:

" 'Disability pension statutes generally require a causal connection between the disability and the work. Such a pension usually contemplates disaster directly resulting from the service. Our attention has not been called to any statute not containing this element. . . . Such statutes as a rule do not create a system of insurance but aim to protect against the hazards to which firemen as such are exposed.' (374)

"Under plaintiff's interpretation of Section 423.745, a policeman who works for 19 years and then voluntarily retires would receive no pension—this is the case under subd. 1(1) [L. 1949, c. 406, § 5, subd. 1(1), as amended by L. 1953, c. 127, § 5]—while a policeman of one day's service would be entitled to retirement upon a pension for permanent disability by a sickness having no causal relation whatever to the performance of his duties. It seems obvious that such a radical departure from ordinary disability pensioning laws should not be presumed to be the legislative intent without direct, nonambiguous language to that effect.

"While Section 423.745, subd. 1(4) does not establish a system of general disability insurance, Section 423.75, subd. 3 [L. 1949, c. 406, § 6, subd. 3, as amended by L. 1953, c. 127, § 6] does provide for a kind of disability insurance. That provision of Section 423 reads:

" 'Subd. 3. Disabled members. Any member who becomes disabled from performing his duties as a member of the police department of the city by reason of sickness or accident, if off the payroll of the police department, having exhausted all accumulated vacation, overtime, and

sick leave credits due him, is entitled to receive from the association during his disability such benefits as the bylaws of the association provide, but such benefits shall not extend beyond a six-months period except when a member is disabled because of an injury sustained while on duty. Such benefits may extend for an indefinite time during disability. . . .'

Under Section 423.75, subd. 3, then, a policeman may receive pension benefits for up to six months if he is temporarily disabled on account of sickness or injury, regardless of the cause. If the disablement is causally connected to his work, then he may receive such pension benefits indefinitely.

"The pension provided by Section 423.745, subd. 1(4) is a long term pension for permanent disability. Since in the case of long term pension benefits for *temporary* disability the legislature clearly requires that the injury be work-related, it would be an anomalous situation if the long term pension for *permanent* disability were not conditioned upon the requirement that the disablement be work-caused.

"For a member to be entitled to pension benefits under Section 423.745, subd. 1(4), the member's permanent disablement must have been causally connected to his work as policeman. Here the parties have stipulated that the plaintiff's disablement was not caused by his work. Therefore, plaintiff is not entitled to pension benefits for permanent disablement under Section 423.745, subd. 1(4)."

There is no evidence to support plaintiff's contentions that he has been denied due process and equal protection of the law because other members of the police department similarly situated have been granted pensions.

Affirmed.